**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

RAMONA L. HOSEY,

        **Plaintiff,**

v.                           **CIVIL ACTION NO. 1:11CV207**
                                    **(Judge Keeley)**


COMMISSIONER OF SOCIAL
SECURITY,

        **Defendant.**


**MEMORANDUM OPINION AND ORDER ADOPTING
<u>REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE</u>**


Pursuant to 28 U.S.C. §636(b)(1)(B), Fed. R. Civ. P. 72(b), and L.R. Civ. P. 4.01(d), on December 17, 2011, the Court referred this Social Security action to United States Magistrate John S. Kaull with directions to submit proposed findings of fact and a recommendation for disposition.

On August 31, 2012, Magistrate Judge Kaull filed his Report and Recommendation ("R&R"), which directed the parties, in accordance with 28 U.S.C. § 636(b)(1) and Rule 6(e), Fed. R. Civ. P., to file any written objections with the Clerk of Court within fourteen (14) days after being served with a copy of the R&R. On September 13, 2012, the plaintiff, Ramona L. Hosey ("Hosey"), by her attorneys, Joyce H. Morton and Montie VanNostrand, filed objections to the R&R. (Dkt. No. 14). On September 14, 2012, the Commissioner also objected to the R&R. (Dkt. No. 15).

HOSEY V. ASTRUE                                                          1:11CV207

## MEMORANDUM OPINION AND ORDER ADOPTING
## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  PROCEDURAL BACKGROUND

On October 2, 2007, Hosey filed an application for Disability Insurance Benefits ("DIB"), alleging disability since April 1, 2005, due to arthritis, seizures, asthma, osteoporosis, stomach acid reflux, hernia, and depression. (R. 232, 237). On January 24, 2008, the Commissioner denied her application initially, and then on reconsideration, on April 9, 2008. (R. 16).

At a hearing on June 25, 2009, at which Hosey appeared without counsel and without medical records (R. 42), an Administrative Law Judge ("ALJ") advised her of her right to counsel, provided her with forms to obtain her medical records, and continued the hearing until  November 18, 2009. (R. 50-51). At the second hearing, Hosey appeared by counsel and testified. An impartial Vocational Expert ("VE") also testified. (R. 52).

Based on a review of her record of earnings, the ALJ determined that Hosey had a sufficient number of quarters to remain insured through December 31, 2008, her date last insured ("DLI").[1] (R. 16). On January 20, 2010, the ALJ determined that Hosey "was

---

[1] Because Hosey's date last insured ("DLI") is December 31, 2008 (R. 196), she must prove she was disabled on or before that date. Johnson v. Barnhart, 434 F.3d 650 (4th Cir. 2005).

HOSEY V. ASTRUE                                        1:11CV207

### MEMORANDUM OPINION AND ORDER ADOPTING
### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

not under a disability within the meaning of the Social Security Act from April 1, 2005 through her DLI." (R.16).

The Appeals Council denied her request for review on November 10, 2011 (R. 1), thus making the ALJ's decision the final decision of the Commissioner. (R. 1). On December 27, 2011, Hosey timely filed this civil action seeking judicial review of the final decision. (Dkt. No. 1).

## II.  PLAINTIFF'S BACKGROUND

On her alleged onset date, April 1, 2005, Hosey was forty-nine (49) years old and was considered a younger individual (age 18-49). On December 31, 2008, her DLI, Hosey was fifty-two (52) years old and was considered an individual closely approaching advanced age, (20 CFR 404.1563). (R. 32, 212). She has a high-school education and a secretarial diploma from West Virginia Career College. (R. 241). Her past relevant work history includes employment as a salesperson, sewing machine operator, press machine operator, census clerk, test clerk, convenience store clerk, stock clerk, and cashier. (R. 92-93). The record reflects that Hosey did not work outside the home from 1980 through 1993, worked in 1994 and 1995, did not work in 1996 and 1997, worked in 2000, did not work in

HOSEY V. ASTRUE                                                    1:11CV207

## MEMORANDUM OPINION AND ORDER ADOPTING
## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

2001, worked in 2002, 2003, 2004 and 2005, and has not worked since 2005. (R. 210).

### III.   ADMINISTRATIVE FINDINGS

Utilizing the five-step sequential evaluation process prescribed in the Commissioner's regulations at 20 C.F.R. §§ 404.1520, the ALJ made the following findings:

1.  Hosey last met the insured status requirements of the Social Security Act on December 31, 2008 (R. 18);

2.  Hosey did not engage in substantial gainful activity during the period from her alleged onset date of April 1, 2005, through her date last insured of December 31, 2008 (20 CFR 404.1571 *et seq.*) (R. 18);

3.  Through the date last insured, Hosey had the following severe impairments: degenerative disc disease of the lumbar spine, including mild osteoporosis; tendonitis of the right shoulder; seizure disorder unspecified and controlled; Major Depressive Disorder; and Anxiety Disorder not otherwise specified (20 CFR 404.1520(c)( (R. 18);

4.  Through the date last insured, Hosey did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526) (R. 19);

5.  Through the date last insured, Hosey retained the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the exception of the opportunity to change positions briefly as

HOSEY V. ASTRUE                                          1:11CV207

## MEMORANDUM OPINION AND ORDER ADOPTING
### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

needed after sitting for 30 minutes or standing for 20 to 30 minutes, was unable to use her right upper extremity for work above the shoulder level, was unable to climb ladders, ropes or scaffolds, or crawl and could only occasionally climb ramps and stairs, balance, stoop, kneel, and crouch, needed to avoid concentrated exposure to excessive cold, dampness, dust and fumes, was unable to work in or around crowds, was limited to occasional interaction with the public of a superficial nature, and was unable to perform work requiring sustained immediate memory or fast production rate pace (R. 22);

6.    Through the date last insured, Hosey was unable to perform any past relevant work (20 CFR 404.1565) (R. 32);

7.    Hosey was born on February 25, 1956, and was 49 years old, which is defined as a younger individual age 18-49, at the time of her alleged onset date. During the pendency of the case, Hosey changed age category to closely approaching advanced age, and at her date last insured, was in the category of closely approaching advanced age (20 CFR 404.1563) (R. 32);

8.    Hosey has at least a high school education and is able to communicate in English (20 CFR 404.1564) (R. 42);

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Hosey is "not disabled," whether or not she has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2) (R. 32);

10.   Through the date last insured, considering Hosey's age, education, work experience, and residual

5

HOSEY V. ASTRUE                                              1:11CV207

**MEMORANDUM OPINION AND ORDER ADOPTING**
**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

> functional capacity, jobs existed in significant
> numbers in the national economy that she could have
> performed (20 CFR 404.1569 and 404.1569(a)) (R.
> 32); and

11. Hosey was not under a disability, as defined in the
Social Security Act, at any time from April 1,
2005, the alleged onset date, through December 31,
2008, the date last insured (20 CFR 404.1520(g))
(R. 33).

(R. 16-33)

**IV. MEDICAL EVIDENCE**

The Court incorporates the magistrate judge's extensive review
of the medical records contained in his R&R. (R&R 2-35).

**V. LEGAL ANALYSIS**

**A. Scope of Review**

The scope of review of an administrative finding of no
disability is limited to determining whether "the findings of the
Secretary are supported by substantial evidence and whether the
correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456
(4th Cir. 1990). In Smith v. Schweiker, 795 F.2d 343, 345 (4th
Cir.1986), the Fourth Circuit described the scope of review as
"specific and narrow. We do not conduct a de novo review of the
evidence, and the Secretary's finding of non-disability is to be
upheld, even if the court disagrees, so long as it is supported by
substantial evidence." Id. Substantial evidence is "such relevant

HOSEY V. ASTRUE                                          1:11CV207

## MEMORANDUM OPINION AND ORDER ADOPTING
## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict where the case is before a jury, then there is 'substantial evidence.'" Hays, 907 F.2d at 1456 (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1968)). In Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987), the Fourth Circuit recognized that "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." 829 F.2d 514, 517 (4th Cir. 1987).

### B.  Date Last Insured

As a threshold matter, it is undisputed that Hosey's date last insured ("DLI") is December 31, 2008. (R. 16) The relevant time frame for her claim therefore is April 1, 2005, the alleged onset date, through December 31, 2008, her DLI. Accordingly, in order to be entitled to a finding of disability, Hosey must establish a disability on or before her DLI.

7

HOSEY V. ASTRUE                                          1:11CV207

### MEMORANDUM OPINION AND ORDER ADOPTING
### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

#### C. Objections to the R&R

Hosey objects to the magistrate judge's recommendation that there is substantial evidence in the record to support the ALJ's decision that the degenerative arthritis of her hands and wrists and her status post carpal tunnel syndrome were not severe impairments. She contends that the ALJ failed to consider her limitations in bilateral reaching and her limitation in handling and fingering objects. She also argues that all of the jobs identified by the VE require continuous or frequent reaching and continuous or frequent handling, grasping, gripping or fingering. She argues that, even though she can use her hands and wrists during daily activities, her impairments affect her ability to grasp and manipulate objects, and that even occasional or frequent use of her hands while at work would "exacerbate and worsen these pre-existing conditions," making it unlikely that she would be able to "sustain these repetitive functions on a daily basis at work." (Dkt. No. 15). She also argues that on remand the issues should not be limited to the issue of reaching overhead.

The Commissioner objects to the magistrate judge's recommendation to remand this action. He argues that the record supports the ALJ's determination that Hosey did not have a severe

8

HOSEY V. ASTRUE                                          1:11CV207

## MEMORANDUM OPINION AND ORDER ADOPTING
## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

impairment or any functional limitations related to her left shoulder, and that the findings regarding the Dictionary of Occupational Titles ("DOT") and the VE's testimony related to overhead reaching were not inconsistent. (Dkt. No. 14).

He further argues that the magistrate judge based his recommendation to remand on evidence regarding a left shoulder impairment that existed prior to Hosey's alleged date of disability, her own testimony regarding her symptoms, an improper re-weighing of the medical evidence, and a conflict between the DOT and the vocational expert's testimony regarding overhead reaching. (Dkt. No. 14).

The ALJ identified Hosey's severe impairments as degenerative disc disease of the lumbar spine, including mild osteoporosis, tendonitis of the right shoulder, seizure disorder, unspecified and controlled, major depressive disorder, and anxiety disorder. (R. 18). He also identified other impairments not considered severe within the meaning of the Regulations as history of surgery for carpal tunnel syndrome, chondromalacia of her knees, and GERD. (R. 18).

HOSEY V. ASTRUE                                                1:11CV207

### MEMORANDUM OPINION AND ORDER ADOPTING
### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

#### D.   Review of the Evidence

#### 1.   Status Post Carpal Tunnel Syndrome and Degenerative Arthritis

Although the ALJ determined that Hosey's status post carpal tunnel syndrome constituted a "severe" impairment within the meaning of the regulations, he concluded that neither it nor her later diagnosis of degenerative arthritis resulted in any "continued work-related limitation of function of more than a minimal degree." (R. 18). At step two of the sequential evaluation, Hosey bore the burden of producing proof that she had a severe impairment. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983). Moreover, as the magistrate judge noted in his R&R, a mere diagnosis of a condition is not enough to prove disability. There must be a showing of related functional loss. See Gross v. Heckler, 785 F.2d 1163 (4th Cir. 1986). (R&R 40).

In his review of Hosey's objections, the magistrate judge considered the following evidence when determining the severity of any functional work-related limitations Hosey might have as a result of her status post carpal tunnel syndrome and her degenerative arthritis:

HOSEY V. ASTRUE                                               1:11CV207

## MEMORANDUM OPINION AND ORDER ADOPTING
## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

1.   An October 13, 1999 report from Dr. Bordonada indicating that Hosey had surgery for release of carpal tunnel on her right hand (R. 550);

2.   A December 7, 1999 report from Dr. Bordonada indicating that Hosey had surgery for release of carpal tunnel on her left hand (R. 541);

3.   A January 9, 2006 note from Dr. Stefanick, a neurologist, indicating that Hosey had complained of numbness of the left hand and noting a positive Tinel's sign (R. 213);

4.   A February 19, 2006 note from Ronald Pearson, M.D., noting Hosey's hands showed no clubbing or cyanosis, 2+ pulses throughout all extremities and no edema (R. 528);

5.   A November 5, 2007 note from Dr. Khorshad, who examined Hosey on referral from the State agency, indicating a diagnosis of degenerative arthritis of the hands but not carpal tunnel syndrome. Significantly, his findings included that her fine manipulation was intact and her grip strength was 4/5 (R. 364);

6.   A July 6, 2009 note from WVHR regarding an examination conducted six months after her DLI that indicated Hosey had reported "some pain and decreased strength in the right arm and hand," a normal examination, including negative Phalen's and

11

HOSEY V. ASTRUE                                              1:11CV207

### MEMORANDUM OPINION AND ORDER ADOPTING
### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Tinel's signs, and a diagnosis of "status post carpal tunnel surgery" (R. 577);

7.   An October 1, 2010 report from Dr. Mujheed Rahman indicating that Hosey complained of pain, numbness, and weakness of both arms for about ten or twelve years. The examination revealed symmetrical strength in both upper and lower extremities, unremarkable sensory exam, normal finger to nose test, normal gait and positive Tinel's and Phalen's. He diagnosed bilateral carpal tunnel syndrome and scheduled nerve conduction studies and an EMG. Following receipt of normal test results, Dr. Rahman revised his diagnosis, stating: "There is no electrodiagnostic evidence of carpal tunnel syndrome or ulnar neuropathy or polyneuropathy or cervical radiculopathy (R. 674);"

8.   A November 9, 2010 report from Dr. Rahman indicating that Hosey complained of bilateral hand and wrist pain, weakness, and inability to sew and hold a book when she read. He diagnosed arthritis (R. 680);

9.   A February 7, 2011 note from Elk Memorial Clinic indicating that Hosey had reported hand pain and stated she thought it was rheumatoid arthritis. She reported that her pinky finger and next finger went numb, her knuckles ached, the pads at the base of

HOSEY V. ASTRUE                                              1:11CV207

### MEMORANDUM OPINION AND ORDER ADOPTING
### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

her thumbs and little finger throbbed and made sewing difficult
because it was "hard to hold the needle." The physical exam
revealed "generalized osteoarthritic changes of the fingers and
wrists (R. 693);" and

10.   A May 23, 2011 office note from Elk Memorial Clinic
indicating no edema or tenderness on examination and no diagnosis
of any kind. Hosey was directed to start taking an iron supplement
and was to return if symptoms continued or failed to improve.
(R.695)

The record further reflects that, on January 8, 2008, State
reviewing physician Porfirio Pascasio, MD, completed a Physical
Residual Functional Capacity Assessment ("RFC") indicating that
Hosey could occasionally lift and carry 20 pounds, frequently lift
and carry 10 pounds, could stand and/or walk about 6 hours in an 8-
hour workday, sit about 6 hours in an 8-hour workday, could never
climb ladders, ropes or scaffolds, could occasionally perform all
other postural limitations, should avoid concentrated exposure to
temperature extremes, fumes, odors, dust  etc. and hazards, and had
no manipulative, visual, or communicative limitations. (R. 292).

Additionally, on April 9, 2008, State agency reviewing
physician Fulvio Franyutti completed an RFC indicating that Hosey

HOSEY V. ASTRUE                                          1:11CV207

### MEMORANDUM OPINION AND ORDER ADOPTING
### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

could lift and carry 20 pounds occasionally and 10 pounds
frequently, could stand and/or walk 6 hours in an 8-hour workday,
could sit 6 hours in an 8-hour workday, could never climb
scaffolds, ropes, or ladders, could occasionally perform all other
posturals, had no manipulative, visual or communications
limitations, should avoid concentrated exposure to temperature
extremes, fumes, odors, dust etc., and hazards, but had no other
environmental limitations. (R. 413).

Significantly, the magistrate judge noted that Hosey's 1999
surgeries had occurred several years before her alleged onset date
and, according to her earnings records (R. 209), she continued to
work regularly for several years after the surgeries. (R&R 19) The
record in fact establishes that Hosey had earnings in 2000, 2002,
2003, 2004 and 2005. (R. 196).

During the administrative hearing, Hosey admitted that,
following her carpal tunnel release surgeries, she had worked as a
store clerk for Skidmore Development and Turnpike Grocery, as a
census clerk, going door to door gathering information for the
Census Bureau, and as an interviewer for the Census Bureau
administering tests to potential census employees at various
locations. She stated that she quit working at Skidmore Development

14

HOSEY V. ASTRUE                                          1:11CV207

### MEMORANDUM OPINION AND ORDER ADOPTING
### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

because she could no longer deal with "nasty" people at the flea market and bargain store, or help load the oil barrels. (R. 79-80).

In Cauthen v. Secretary, 426 F.2d 891, 892 (4th Cir. 1970), "[t]he evidence reveal[ed] that the eye problem is one of long standing and that claimant has worked regularly for many years affected to virtually the same extent as at present." Here, in like manner, Hosey worked after her carpal tunnel surgeries and the medical evidence reflects no significant deterioration in her condition prior to her DLI.

Thus, substantial evidence supports the ALJ's determination that, even though Hosey's status post carpal tunnel syndrome and degenerative arthritis of the wrist and hands were severe impairments, they did not result in any functional work-related limitations.

### 2.   Limitation of restrictions to only overhead reaching

Hosey argues that the evidence of record establishes that her limitations should not be restricted to only overhead reaching related to her right arm. According to the Commissioner, however, when the magistrate judge recommended remand for consideration of a possible left shoulder impairment, he improperly relied on evidence generated prior to Hosey's alleged onset date, Hosey's

HOSEY V. ASTRUE                                        1:11CV207

**MEMORANDUM OPINION AND ORDER ADOPTING**
**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

testimony regarding her symptoms, and his own reweighing of the medical evidence. (Dkt. No. 14).

The following evidence, however, establishes that the findings regarding both of her shoulders were consistent and similar:

1.   A February 28, 2005 report from Dr. Snead, an orthopedic surgeon, indicating that Hosey had reported having difficulty getting both arms over her head and behind her back. On examination, he noted that both shoulders demonstrated only 90 degrees of abduction, with pain getting both arms behind her back, and a positive impingement sign in both of her shoulders (R. 301);

2.   A March 17, 2005 report from Dr. Snead indicating that Hosey had received a series of shots in her shoulders and knees that provided no relief (R. 435);

3.   A May 13, 2005 MRI of the left shoulder from BCMH indicating "mild increased signal intensity in the distal supraspinatus tendon with subchondral cystic changes in the humeral head. Findings are most consistent with chronic tendon degeneration or partial under surface tear. No evidence of full thickness or complete tear (R. 283);"

4.   A May 13, 2005 MRI of the right shoulder indicating "Chronic tendon degeneration versus partial under surface tear of

16

HOSEY V. ASTRUE                                              1:11CV207

## MEMORANDUM OPINION AND ORDER ADOPTING
## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

the distal supraspinatus tendon.  No evidence of full thickness or complete tear.  Findings similar to left shoulder.  No evidence of acute abnormality or joint effusion (R. 283);"

     5.    A June 1, 2005 report from Dr. Snead indicating that Hosey had complained of ongoing bilateral shoulder pain.  On examination the right shoulder was the most painful one with crepitation and grinding and 90 degrees abduction. He noted that she had received four shots with no relief and recommended as "the only solution an arthroscopic rotator cuff decompression of the right shoulder (R. 300);

     6.    A July 19, 2005 report from Dr. Snead indicating that Hosey had undergone arthroscopic acromioplasty on her right shoulder. The preoperative diagnosis was rotator cuff tendinitis of the right shoulder and a postoperative diagnosis of rotator cuff tendinitis of the right shoulder (R. 299);

     7.    A July 28, 2005 office note from Dr. Snead indicating that Hosey had reported a lot of bilateral shoulder pain. Dr. Snead demonstrated how Hosey should perform Codman's exercises at home to increase the motion in her shoulder, and he refilled her prescription for Darvocet (R. 431);

17

HOSEY V. ASTRUE                                          1:11CV207

## MEMORANDUM OPINION AND ORDER ADOPTING
## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

8.    An August 17, 2005 office note from Dr. Snead indicating
that Hosey had "ongoing bilateral shoulder pain." Dr. Snead noted
that Hosey was doing better, had 160 degrees of abduction, had lost
some internal rotation but her pain was much better. He opined, "I
think she is going to be okay (R. 429);"

9.    A September 15, 2005 office note from Dr. Piggott
indicating that Hosey had reported her shoulders were "still sore"
even with the exercises from Dr. Snead (R. 358);

10.   An October 13, 2005 progress note from Dr. Piggott
indicating that Hosey had reported both of her shoulders were very
sore, and that in the morning she couldn't move because her
shoulders were very stiff (R. 357); and

11.   A November 5, 2007 report from Miraflor Khorshad, M.D.
documenting findings that both of Hosey's rotators were "tight" and
both shoulder joints exhibited "limited range of motion," and a
diagnosis of degenerative arthritis of both shoulders and hands.
(R. 361-64).

The ALJ considered the severity of Hosey's right shoulder
impairment pursuant to section 1.02B of the listings. Listings 1.02
A and B *both* require:

18

HOSEY V. ASTRUE                                          1:11CV207

**MEMORANDUM OPINION AND ORDER ADOPTING**
**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

> *Major dysfunction of a joint*(s) (due to any
> cause): Characterized by gross anatomical
> deformity (e.g., subluxation, contracture,
> bony or fibrous ankylosis, instability) and
> chronic joint pain and stiffness with signs of
> limitation of motion or other abnormal motion
> of the affected joint(s) and findings on
> appropriate medically acceptable imaging of
> joint space narrowing, bony destruction, or
> ankylosis of the affected joints.

He then determined that, following Hosey's July, 2005 arthroscopic

acromioplasty on her right shoulder for rotator cuff tendinitis,

the record did not establish any continued joint space narrowing,

bony destruction or ankylosis of the affected joints, nor any

inability to perform fine and gross movements effectively as

defined in 1.00B2C. Accordingly, he determined that her impairment

did not satisfy the required level of severity in the Listing.

The magistrate judge, however, noted that, although the record

established that Hosey had repeatedly complained of bilateral

shoulder pain, the ALJ failed to address a left shoulder

impairment. He therefore determined there was evidence of record

strongly suggesting Hosey might have a left shoulder impairment as

well as one of the right shoulder.

The record is clear that Dr. Snead performed surgery only on

the right (dominant) shoulder and does not establish that he ever

19

HOSEY V. ASTRUE                                        1:11CV207

### MEMORANDUM OPINION AND ORDER ADOPTING
### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

planned to operate on the left shoulder. On a disability report
dated June 22, 2005, however, Hosey reported that Dr. Snead had in
fact planned to operate on both of her shoulders. (R. 220).

After finding that Hosey's right shoulder impairment was
severe, the ALJ, in his RFC, stated that she was unable to use her
right upper extremity for any work above the shoulder level.
However, he failed to evaluate a possible left shoulder impairment
or to address any limitations that might be associated with the
left shoulder. The magistrate judge therefore found it unclear
whether Hosey should be limited to jobs that preclude any work
above the shoulder level. Accordingly, he correctly recommended
remand to the Commissioner for a determination regarding a possible
left shoulder impairment and consideration of whether Hosey was
prohibited from reaching above either shoulder.

### 3.   Significant Number of Jobs in the National and Local Economy That Hosey Can Perform and Inconsistency with DOT

Hosey contends she cannot perform any of the jobs identified
by the VE because all require more than occasional reaching,
grasping and fingering. The Commissioner, on the other hand,
contends the magistrate judge incorrectly recommended remand due to
the ALJ's failure to resolve an "alleged inconsistency between the

HOSEY V. ASTRUE                                              1:11CV207

MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Dictionary of Occupational Titles ("DOT") and the vocational expert's testimony regarding overhead reaching." (Dkt. No. 14).

The United States Department of Labor's Dictionary of Occupational Titles (4th ed., Rev. 1991) ("DOT") defines "reaching" as "[e]xtending hand(s) and arm(s) in any direction." This definition clearly includes reaching above shoulder level.

All of the jobs identified by the VE require at least frequent "reaching." Since the ALJ directed the VE to omit the requirement of overhead reaching with the right arm, it is possible that the particular jobs he identified might not require reaching above the shoulder level with the right arm. He was never asked, however, whether the jobs would be available to an individual who was unable to use either arm to work overhead.

The ALJ posed the following hypothetical questions to the VE:

> Q.   ... For the first hypothetical question, lets assume that we have an individual of the claimant's age. She has gone from a younger individual to an individual approaching advanced age with high school education and the work background as described. Lets assume that this individual is limited to light exertion, as that term is defined in the regulations. Would not be capable of performing medium or heavy work. We'll assume that the individual will require an opportunity to change position briefly after standing 20 to 30 minutes or sitting 30 minutes. <u>We will assume that this individual should not have to use the right upper extremity to perform activities above shoulder level</u>. We will assume this individual would not

MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

be able to climb any ladders, ropes or scaffolds or engage in any crawling activities. Essentially would be limited to occasional postural activities, such as stair climbing balancing, kneeling and crouching. We are going to assume further that the individual should have minimal, by that I mean, less than occasional exposure to any type of hazards, such as dangerous machinery or unprotected heights or operate automotive equipment. No concentrated exposure to excessive cold or dampness and no concentrated exposure to dust or fumes. We are going to assume for this hypothetical the individual would be able to perform tasks regularly with the customary breaks every two hours. We are going to assume that the individual cannot perform tasks that would require sustained memory. Immediate memory. And we are going to assume that the individual should not have to work in or around crowds. Would be capable of occasional interaction with the public, essentially of a superficial or simple nature. With the above limitations, lets keep it to those restrictions. Would such an individual be able to perform any of the claimant's past work?

A.   No. I don't think she would be able to, Your Honor.

Q.   All right. Would there be unskilled, light occupation such an individual could perform?

A.   The region I will be using today is all of West Virginia, Western Maryland, Western Pennsylvania, and eastern Ohio. Under the light exertion level, Your Honor, a laundry worker working as a folder, 88,000 nationally, 1,300 regionally and because the hypothetical includes a change of position briefly every 30 minutes, I would reduce those numbers in half, Your Honor, and that is based upon my experience in placing individuals. The DOT code is 369.687-018. Also under the light exertion level, a garment sorter, 178,000 nationally, 1,500 regionally and, again, I would reduce those numbers in half, Your Honor, because of the same reasoning of the change of position briefly every 30 minutes. The DOT code is 222.687-014. These are samplings, Your Honor.

22

HOSEY V. ASTRUE                                                    1:11CV207

## MEMORANDUM OPINION AND ORDER ADOPTING
### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Q.   Okay. What about sedentary positions?

A.   Under the sedentary level, Your Honor, an addresser
     stuffer, 240,000 nationally, 2000 regionally. The DOT
     code is 209.587-010. Also a general sorter and setter,
     25,000 nationally and 900 regionally. The ODT code is
     734.687-010. That, again, Your Honor, is a sampling.

(Emphasis added).

Hosey's own testimony about her daily activities supports the
conclusion that she can reach in any direction except possibly
above the shoulder. Hosey testified that her daily activities
included taking care of her own personal needs, straightening the
house in the morning, fixing dinner, working on the house in the
afternoon, reading, watching television, playing games, making the
bed, running the vacuum, washing dishes, cooking, cleaning the
bathroom, putting groceries away, washing windows, ironing
clothing, mopping the floor, going grocery shopping, and driving a
car. (R. 28).

The magistrate judge identified an apparent inconsistency
between the jobs the ALJ identified and the DOT. Prior to
questioning the VE, the ALJ inquired: "If your testimony conflicts
with the dictionary of occupational titles, would you let us know
and provide the basis for your opinion?" (R. 92), which the VE
agreed to do. In the R&R, however, the magistrate judge observed

HOSEY V. ASTRUE                                    1:11CV207

### MEMORANDUM OPINION AND ORDER ADOPTING
### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

that, even though the ALJ's hypothetical contained a restriction on
any work above shoulder level with the dominant right hand, the DOT
provides for at least frequent "reaching" ("extending hand(s) and
arm(s) in any direction") in each of the job identified by the VE.
(R&R 45).

Social Security Ruling ("SSR") 00-4p clarifies 20 C.F.R.
section 404.1566, which provides that, without more, an ALJ will
consider both the Dictionary of Occupational Titles and vocational
expert testimony to determine whether a Social Security claimant
can find work suited to his residual functional capacity.  SSR 00-
4p, 2000 WL 1898704 at *2 (December 4, 2000) additionally provides:

> Occupational evidence provided by a VE or VS generally
> should be consistent with the occupational information
> supplied by the DOT. When there is an apparent unresolved
> conflict between [VE] evidence and the DOT  the
> adjudicator must elicit a reasonable explanation for the
> conflict before relying on the [VE] evidence to support
> a determination or decision about whether the claimant is
> disabled. At the hearings level, as part of the
> adjudicator's duty to fully develop the record, the
> adjudicator will inquire, on the record, as to whether or
> not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically
> 'trumps' when there is a conflict. The adjudicator must
> resolve the conflict by determining if the explanation
> given by the VE or VS is reasonable and provides a basis
> for relying on the VE of VS testimony rather than on the
> DOT information.

HOSEY V. ASTRUE                                          1:11CV207

### MEMORANDUM OPINION AND ORDER ADOPTING
### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

. . .

When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:

Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and

If the VE's or VS's evidence appears to be in conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

. . .

When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

Even before the effective date of SSR 00-4p, in Byrd v. Apfel, 168 F.3d 481 (4th Cir. 1998) (unpublished), the Fourth Circuit had noted VE testimony that overhead reaching was usually not required in the jobs at issue in that case. Here, in contrast, the ALJ failed to inquire of the VE whether the jobs he identified required frequent reaching above the shoulder level.

25

HOSEY V. ASTRUE                                         1:11CV207

## MEMORANDUM OPINION AND ORDER ADOPTING
## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Considering that the ALJ failed to explain his reasons for not considering the possibility of a left arm impairment, and the apparent inconsistency between the jobs named by the VE and the DOT's descriptions of those jobs, the Court agrees with the magistrate judge's conclusion that the record did not contain substantial evidence to support a determination that jobs existed in significant numbers in the national economy that Hosey could perform.

### 4.   Credibility Analysis

Hosey contends the ALJ applied an incorrect pain standard and failed to adequately analyze her subjective symptoms and limitations. (Dkt. No. 15). The Fourth Circuit has previously stated that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (citing Tyler v. Weinberger, 409 F.Supp. 776 (E.D. Va. 1976)).

In Craig v. Chater, 76 F. 3d 585 (4th Cir. 1996), the Fourth Circuit established a two-prong test for evaluating a claimant's subjective complaints of pain. Under the first prong, an ALJ must determine whether the objective evidence of record establishes the

26

HOSEY V. ASTRUE                                          1:11CV207

## MEMORANDUM OPINION AND ORDER ADOPTING
## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

existence of a medical impairment or impairments resulting from
anatomical, physiological or psychological abnormalities that could
reasonably be expected to produce the pain or other symptoms
alleged. Id. at 594. Under the second prong, the ALJ must
"expressly consider" whether a claimant has such an impairment. Id.
at 596.

    If a claimant satisfies these two prongs, the ALJ then must
evaluate the "intensity and persistence of the claimant's pain, and
the extent to which it affects her ability to work." Id. at 595. In
this evaluation, an ALJ must consider

> not only the claimant's statements about her
> pain, but also 'all the available evidence,'
> including the claimant's medical history,
> medical signs, and laboratory findings . . .
> and any other evidence relevant to the
> severity of the impairment, such as evidence
> of the claimant's daily activities, specific
> descriptions of the pain, and any medical
> treatment taken to alleviate it.

Id.

    Here, the ALJ determined that Hosey satisfied the first prong
of the test and proceeded to the second step of evaluating the
intensity and persistence of her pain and the extent to which it
affected her ability to work at the time on or before her DLI. The
ALJ considered Hosey's statements about her pain, her medical

27

HOSEY V. ASTRUE                                              1:11CV207

### MEMORANDUM OPINION AND ORDER ADOPTING
### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

history, medical signs, laboratory findings and objective medical evidence of pain, and the medical treatment used to alleviate her pain. The ALJ also considered her own testimony regarding her daily activities, all of which supports his credibility determination.

Furthermore, the ALJ noted that the results of Hosey's first Minnesota Multiphasic Personality Inventory (MMPI-2) were evaluated as very likely invalid by the administering psychologist. (R. 461) When Hosey again took the same battery of tests at a later time, another psychologist warned that her profile "should be interpreted with caution" because there was "some possibility that the clinical report is an exaggerated picture of the present situation and problems." (R. 589-593). These opinions that Hosey may have, or in fact did, exaggerate her symptoms on a self-report test such as the MMPI-2 support the ALJ's credibility determination. Moreover, in his RFC assessment, Dr. Franyutti opined that Hosey was only partially credible because the evidence in the record did not fully support her allegations. (R. 413). Dr. Pascasio also stated that he was unable to assess Hosey's credibility because she had not returned a function report or account of her activities of daily living. (R. 397).

HOSEY V. ASTRUE                                           1:11CV207

### MEMORANDUM OPINION AND ORDER ADOPTING
### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The ALJ, as required, considered Hosey's statements regarding her pain and limitation, her daily activities and the evidence of record. He then limited her residual functional capacity to light jobs with the following limitations: 1) ability to change positions briefly after sitting for 30 minutes or standing for 20 to 30 minutes; 2) inability to use her right arm for work above the shoulder level; 3) inability to climb ladders, ropes or scaffolds, or crawl; 4) only occasional climbing of ramps or stairs; 5) only occasional balancing, stooping, kneeling and crouching; 6) must avoid concentrated exposure to excessive cold, dampness, dust and fumes; 7) inability to work around crowds; 8) only occasional interaction in a superficial nature with the public; and 9) inability to perform work requiring sustained immediate memory or a fast production rate pace. (R. 22).

Relying on the Fourth Circuit's holding in <u>Shively</u>, the magistrate judge correctly concluded that there was substantial evidence in the record supporting the ALJ's determination that Hosey's allegations relating to her pain and limitations during the time period from April 1, 2005, her alleged onset date through December 31, 2008, her DLI, were not credible. 739 F.2d at 989.

**E.   Remand**

HOSEY V. ASTRUE                                          1:11CV207

## MEMORANDUM OPINION AND ORDER ADOPTING
### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

To the extent that Hosey, without citing to any relevant authority, or even to the R&R, included a one-sentence "object[ion] to the limitations on remand," the Court overrules that objection as lacking the specificity required by Fed. R. Civ. P. 72(b), see United States v. Midgett, 478 F.3d 616, 622 (4th Cir 2007), and for running afoul of well-settled law. See, e.g., Sullivan v. Hudson, 490 U.S. 877, 886 (1989) ("[T]he district court's remand order will often include detailed instructions concerning the scope of the remand. . . . Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." (citing Hooper v. Heckler, 752 F.2d 83, 88 (4th Cir. 1985); Mefford v. Gardner, 383 F.2d 748, 758-759 (6th Cir. 1967)); see also Adkins v. Barnhart, 351 F.Supp.2d 505, 507-08 (W.D. Va. 2005).

## VI. CONCLUSION

The R&R recommended reversing the Secretary's decision under sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3), and remanding this case to the Secretary for further proceedings consistent with this Recommendation. After careful examination of the objections, it appears that neither the Commissioner nor Hosey has raised any issues that were not thoroughly considered by the magistrate judge

30

HOSEY V. ASTRUE                                              1:11CV207

### MEMORANDUM OPINION AND ORDER ADOPTING
### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

in his R&R. Moreover, after an independent de novo consideration of all matters before it, the Court is of the opinion that the R&R accurately reflects the law applicable to the facts and circumstances before it in this action. It therefore **ACCEPTS** the magistrate judge's R&R in whole and **ORDERS** that this civil action be disposed of in accordance with the recommendation of the magistrate judge.  Accordingly:

1.   The plaintiff's motion for Summary Judgment (Docket No. 10) is **GRANTED IN PART**;

2.   The defendant's motion for Summary Judgment (Docket No. 11) is **DENIED**;

3.   The claim is **REMANDED** to the Commissioner for consideration pursuant to the recommendations contained in the magistrate judge's Report and Recommendation and this Order; and

4.   This civil action is **DISMISSED WITH PREJUDICE** and **RETIRED** from the docket of this Court.

The Clerk of Court is directed to enter a separate judgment order. Fed. R. Civ. P. 58.  If a petition for fees pursuant to the Equal Access to Justice Act (EAJA) is contemplated, the plaintiff is warned that, as announced in Shalala v. Schaefer, 509 U.S. 292 (1993), the time for such a petition expires ninety days thereafter.

31

**HOSEY V. ASTRUE**                                                    **1:11CV207**

## MEMORANDUM OPINION AND ORDER ADOPTING
## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The Court directs the Clerk of Court to transmit copies of this Order to counsel of record.

DATED: March 29, 2013.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE